IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| RANDY LEON MEALER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:13-cv-01258-STA-tmp |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER AFFIRMING THE DECISION OF THE COMMISSIONER**

Plaintiff Randy Leon Mealer filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on November 20, 2008. On February 26, 2009, the ALJ denied the claim. Plaintiff appealed, and the Appeals Council remanded the case.

A new hearing was held on March 26, 2010, followed by a supplemental hearing on December 16, 2010. On February 8, 2011, the ALJ found that Plaintiff was not disabled. The Appeals Council subsequently denied his request for review. Thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

1

or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was forty years old at the time of the ALJ's decision.[8] He has a high school education and is able to communicate in English.[9] He has past relevant work as a cook's

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

[8] (R. 54.)

helper.[10] Plaintiff alleges that he became disabled on March 16, 2007, due to back problems, anxiety, depression, arthritis, and inflammatory joints.[11]

The ALJ made the following findings: (1) Plaintiff met the insured status requirements through September 30, 2012; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: back disorder, headache, borderline intellectual functioning ("BIF"), and affective mood disorder; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform a reduced range of light work, except that he can occasionally lift/carry twenty pounds, and frequently lift/carry ten pounds, stand and/or walk with normal breaks for about six hours in an eight-hour workday, sit with normal breaks for about six hours in an eight-hour workday, has no limitations for push/pull except as noted above for lift/carry, can occasionally climb ladders/ropes/scaffolds, and frequently climb ramps/stairs, frequently balance, stoop, kneel, crouch, or crawl, is able to understand, remember, and carry out detailed instructions, is able, with some difficulty, to maintain attention, concentration, persistence, and pace, is able to interact appropriately with supervisors, coworkers, and the general public, and is able, with some difficulty, to respond appropriately to changes in the work setting; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a high school education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because Plaintiff's

---

[9] (*Id.* at 27.)

[10] (*Id.* at 1060.)

[11] (*Id.* at 30, 123.)

past relevant work was unskilled; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[12]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[13] The claimant bears the ultimate burden of establishing an entitlement to benefits.[14] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[15]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

---

[12] (*Id.* at 15-28.)

[13] 42 U.S.C. § 423(d)(1).

[14] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[15] *Id.*

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[16]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[17] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, there is a substantial number of jobs that exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ erred by (1) not finding that he had additional severe impairments at step two; (2) not properly weighing the opinion of his treating physician, Dr. K. Blake Ragsdale; (3) not properly weighing the opinion of a consulting examiner, Dr. James Warmbrod; and (4) not properly assessing his credibility.[18] Plaintiff's arguments are not persuasive.

Severe Impairment Finding

An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities."[19] Although the claimant bears the burden of establishing that an impairment is severe, it is a "de minimis hurdle."[20] "Under [this] prevailing de minimis view, an impairment

---

[16] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[17] 20 C.F.R. § 404.1520(a).

[18] (Pl's Mot. J. Pld, pp. 1 – 2, ECF No. 18-1.)

[19] *See Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 324-25 (6th Cir. 2015) (quoting Soc. Sec. Rul. 85–28, 1985 WL 56856 at *3 (1985)).

[20] *Higgs v. Bowen*, 880 F.2d 860, 862 - 63 (6th Cir. 1988).

5

can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."[21]

However, an ALJ's failure to find a severe impairment when one exists is not error when the ALJ determines that the claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation.[22] This is so because the ALJ "properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity."[23]

In this case, despite concluding that Plaintiff did not have severe impairments of sacroiliitis, neck pain, myositis, asthma, hypertension, and history of stroke at step two, the ALJ found that Plaintiff did have severe impairments of back disorder, headache, BIF, and affective mood disorder. Having determined that Plaintiff suffered from these severe impairments, the ALJ continued to steps four and five and assessed Plaintiff's impairments and their effect on his residual functional capacity. Therefore, Plaintiff's assignment of error is without merit.

Additionally, Plaintiff has failed to show that his alleged additional impairments caused limitations on his ability to work. Although Plaintiff argues that his alleged impairments limited his ability to work, he has failed to point to any evidence to support his argument, and he has failed to identify what additional limitations his impairments allegedly caused, thus waiving his argument.[24]

---

[21] *Id.*

[22] *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

[23] *Id.*

[24] *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006); *see also McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

Furthermore, the record does not indicate that Plaintiff's alleged severe impairments limited his ability to work. Plaintiff was diagnosed with hypertension and hyperlipidemia, but there was no evidence in the record of any impact on his functioning.[25] A mere diagnosis does not establish that a condition is a severe impairment.[26] Plaintiff's asthma is aggravated by his pack-a-day smoking habit,[27] and Plaintiff's tobacco usage undermines his allegations of significant limitations related to a pulmonary condition.[28] Plaintiff's sacroiliitis is controlled by injections and is stable.[29] The fact that Plaintiff's sacroiliitis is controlled by treatment is evidence that it did not affect his ability to perform basic work activities.[30] As for Plaintiff's apparent stroke in 1999, Dr. Hasan Sonmezturk subsequently found that Plaintiff's neurological examination was completely normal, as were a CT scan and MRI that he reviewed.[31]

Because Plaintiff failed to prove that his conditions, whether severe or not severe, imposed limitations on his ability to work beyond the limitations stated in the ALJ's residual functional capacity finding, substantial evidence supports the ALJ's finding at step two of the sequential evaluation process.

---

waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation omitted)).

[25] (R. 15, 214.)

[26] *See Higgs*, 880 F.2d at 863.

[27] (R. 370, 400, 817.)

[28] *See Mullins v. Sec'y of Health and Human Servs.*, 836 F. 2d 980, 985 (6th Cir. 1987); *see also Sias v. Sec'y of Health and Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988).

[29] (R. 179, 182, 185, 190, 193, 196, 199.)

[30] *See Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984).

[31] (R. 491.)

Weighing of Medical Evidence

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Under the treating physician rule, an ALJ must give controlling weight to the opinion of a claimant's treating physician if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."[32] The term "not inconsistent" is meant to convey that "a well-supported treating source medical opinion need not be supported directly by all of the other evidence, (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion."[33]

If an ALJ decides that the opinion of a treating source should not be given controlling weight, the ALJ must take certain factors into consideration when determining how much weight to give the opinion, including "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."[34] Any decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[35] In the present case, the ALJ properly weighed the opinion of Dr. Ragsdale.

---

[32] 20 C.F.R. § 404.1527(c)(2).

[33] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *3 (July 2, 1996).

[34] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

[35] Soc. Sec. Rul. 96–2P, 1996 WL 374188 at *5 (July 2, 1996).

In July 2008, Dr. Ragsdale filled out a checklist related to Plaintiff's limitations.[36] He opined that Plaintiff could sit six hours in an eight-hour day, for forty-five minutes at a time, and stand/walk two hours in an eight-hour day, for thirty minutes at a time; Plaintiff could occasionally lift ten pounds and infrequently lift up to twenty pounds; and Plaintiff could infrequently bend at the waist, reach above the shoulders, and stand on a hard surface but could frequently use his hands for manipulation.[37] Dr. Ragsdale further opined that Plaintiff's medical conditions would cause loss of concentration for several hours three or more days a week and that he would have more than four work absences per month.[38] According to Dr. Ragsdale, Plaintiff could not work forty hours a week.[39]

There is no written portion to the checklist form, and no explanation of what evidence supports the limitations set by Dr. Ragsdale. As noted by the ALJ:

> Even if the form constitutes a medical opinion, the undersigned finds it is not entitled to controlling weight because Dr. Ragsdale's responses are conclusory, do not document clinical findings or diagnoses, are unsupported by his own chart notes, and [are] inconsistent with the record as a whole. The form contains no explanation at all for the imposed limitations.[40]

Additionally, Dr. Ragsdale's opinion could properly not be given controlling weight because, as explained by the ALJ, it was inconsistent with his own treatment records and notes. In April 2007, Plaintiff saw Dr. Ragsdale for the first time when he reported that a fall the

---

[36] (R. 1030-32.)

[37] (*Id.*)

[38] (*Id.*)

[39] (*Id.* at 1031.)

[40] (*Id.* at 26.)

9

previous month had aggravated his back and joint pain.[41]  Plaintiff's cervical spine was normal to palpation, and he had normal range of motion, muscle strength, and tone.[42]  His spine was also normal to inspection.  He had a negative straight leg raise, and X-rays of his back were normal.[43]

In September 2007, there was no change in Plaintiff's condition.[44]  Plaintiff had a limited range of motion but normal muscle strength, reflexes, and sensation, and a negative straight leg raise.[45]  In December 2007, Plaintiff's cervical spine had mild tenderness and mild muscle spasm, but he had a normal range of motion without pain.[46]  In January 2008, Plaintiff's cervical spine was normal, his lumbar spine had tenderness, muscle spasm, and one trigger point, and his thoracic spine had a mild kyphotic deformity, tenderness, and muscle spasm.[47]  Plaintiff continued to have similarly mild findings in March, April, May, and June 2008.[48]  Dr. Ragsdale never assessed limitations and did not prescribe the cane that he observed Plaintiff using in June 2008.[49]  These mild findings do not support Dr. Ragsdale's checklist limitations.

The opinion of Dr. Sonmezturk, a neurologist, also does not support Dr. Ragsdale's limitations.  Dr. Sonmezturk found normal mental status, normal cranial nerves, normal motor

---

[41] (*Id.* at 198.)

[42] (*Id.* at 199.)

[43] (*Id.* at 199-200.)

[44] (*Id.* at 184.)

[45] (*Id.* at 185).

[46] (*Id.* at 182.)

[47] (*Id.* at 179.)

[48] (*Id.* at 1037-50.)

[49] (*Id.* at 1046.)

examination, normal strength in the upper and lower extremities, and normal deep tendon reflexes.[50] Plaintiff also had normal sensory perception, coordination, and gait. Dr. Sonmezturk concluded that there was no physical cause for Plaintiff's numbness or back pain, other than possible muscle spasm. Plaintiff's neurological examination was completely normal, and Dr. Sonmezturk found it "very difficult to believe that [Plaintiff] had a stroke in the past."[51] Dr. Sonmezturk's report supports Dr. Ragsdale's mild findings and conflicts with Dr. Ragsdale's extreme opinion.

Dr. Warmbrod's consultative examination likewise showed only mild findings. Dr. Warmbrod found that Plaintiff had a full range of motion in the cervical spine with only mild discomfort.[52] Dr. Warmbrod diagnosed Plaintiff with rotator cuff syndrome, left shoulder pain, and low back pain and concluded that Plaintiff's "subjective complaints far outweigh his objective findings."[53] These near-normal findings, like those of Dr. Sonmezturk, do not support Dr. Ragsdale's disabling opinion.

Finally, Dr. Ragsdale's opinion was not supported by the opinions of the state agency consultants. Dr. Frank Pennington opined that Plaintiff could lift fifty pounds occasionally and twenty-five pounds frequently; could sit, stand, or walk six hours out of an eight-hour day; and could frequently climb, balance, stoop, kneel, crouch, and crawl.[54] Dr. Reeta Misra had an identical opinion, except that she opined that Plaintiff could only occasionally climb a

---

[50] (*Id.* at 490-91.)

[51] (*Id.*)

[52] (*Id.* at 856-57).

[53] (*Id.*)

[54] (*Id.* at 152-153).

ladder/rope/scaffold.[55] State agency consultants are highly qualified specialists who are also experts in the Social Security disability programs, and their opinions may be entitled to great weight if the evidence supports their opinions.[56]

The ALJ properly gave no weight to Dr. Ragsdale's opinion because it was contradicted by his own treatment notes, the examinations of the other physicians, the objective tests, and the state agency consultants' medical opinions.

Plaintiff also challenges the weighing of Dr. Warmbrod's opinion. Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[57] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[58] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[59] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[60]

---

[55] (*Id.* at 143-44).

[56] *See* 20 C.F.R. § 404.1527(e)(2)(i); Soc. Sec. Rul. 96-6p, 1996 WL 374180, 61 Fed. Reg. 34,466-01 (July 2, 1996).

[57] 20 C.F.R. § 404.1502, 404.1527(c)(1).

[58] *Id.* § 404.1502, 404.1527(c)(2).

[59] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180 at *2.

[60] 20 C.F.R. § 404.1527(c).

In the present case, the ALJ properly explained the weight given to the opinion of Dr. Warmbrod, a one-time consultative examiner, and how he arrived at Plaintiff's residual functional capacity. Substantial evidence supports the ALJ's determination.

Dr. Warmbrod opined that Plaintiff could lift ten pounds frequently and twenty pounds occasionally; he could sit or stand for thirty minutes at a time, walk fifteen minutes at a time, sit or stand four hours in a day, and walk one hour in a day; he required a cane to ambulate and could only walk a few feet without one; he could never reach overhead, and could reach in other directions occasionally on the right, but never on the left; he could occasionally push/pull with the right arm, but never with the left, occasionally use foot controls, occasionally climb stairs, and never climb ladders, balance, stoop, kneel, crouch, or crawl; he could not walk a block at a reasonable pace on an uneven surface.[61]

The ALJ properly gave this opinion no weight because it was internally inconsistent, conflicted with the findings in Dr. Warmbrod's own examination, and appeared to be based primarily on Plaintiff's self-reported limitations. Dr. Warmbrod also failed to explain how his findings supported the extreme limitations in his opinion.

Accordingly, substantial evidence supports the weight given to the medical evidence and opinions in the record and the evaluation of Plaintiff's physical residual functional capacity. The ALJ properly determined that Plaintiff could perform a reduced range of light work, and Plaintiff has failed to show he is otherwise more limited.

Credibility Assessment

---

[61] (R. 858- 863.)

A claimant's credibility comes into question when his "complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence.[62] "To assess credibility, the ALJ must consider "the entire case record," including "any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record."[63] This Court is required to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying."[64] However, the ALJ's credibility finding "must find support in the record."[65]

Here, the Court finds no error in the ALJ's credibility determination because Plaintiff did not provide objective medical evidence to establish the intensity and persistence of his alleged symptoms, and the record as a whole does not indicate that his condition was of disabling severity. Although Plaintiff presented objective medical evidence of an underlying medical condition, i.e., back disorder, headache, BIF, affective mood disorder, and the ALJ found that these impairment could reasonably cause the kind of limitations as alleged by Plaintiff, the ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effect of his alleged

---

[62] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

[63] *Id.*

[64] *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003) (citations omitted).

[65] *Id.*

symptoms were not entirely credible because they were inconsistent with the evidence of record.[66]

First, the ALJ noted that the objective medical evidence did not support Plaintiff's claims. For example, Dr. Sonmezturk's examination showed normal gait and strength with no neurological abnormalities, and a normal CT scan.[67] Likewise, Dr. Ragsdale's examinations showed normal muscle strength and sensation, and all the X-rays Dr. Ragsdale reviewed of Plaintiff's back were normal.[68] Furthermore, Dr. Warmbrod's examination indicated that Plaintiff had a full range of motion in the cervical spine with only mild discomfort, no motor weakness in any of his extremities aside from the left shoulder, and a negative straight leg raise, except for mild low back pain on the left; X-rays of Plaintiff's spine were normal.[69] These mild findings are not consistent with disabling pain or other symptoms. Finally, the ALJ pointed out Dr. Warmbrod's observation that "Plaintiff's subjective complaints far outweigh his objective findings," and commented that Plaintiff's credibility was undermined by Dr. Sonmezturk's report that Plaintiff was a poor historian who repeatedly changed his symptoms during the examination.[70]

Plaintiff objects to the ALJ's acknowledgement of the fact that Plaintiff sought no further treatment from the Health Department after January 2010, arguing this should not have been held

---

[66] *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529(c) (An ALJ is required to analyze the intensity and persistence of the claimant's symptoms if there is objective evidence of a medical condition that could reasonably cause the alleged impairments.).

[67] (R. 20, 488-91.)

[68] (*Id.* at 21, 179-200, 1037-1050.)

[69] (*Id.* at 24, 856.)

[70] (*Id.* at 22-24, 488, 857.)

15

against him because he could no longer afford treatment. Plaintiff has smoked a pack of cigarettes a day for twenty-five years.[71] Plaintiff's ability to support his smoking habit indicates that he had access to at least some assistance that he could have used for basic medical treatment if he deemed it necessary.[72]

Additionally, Plaintiff refused to continue physical therapy, in spite of the fact that he was making good progress and the physical therapist thought he was responding well.[73] If Plaintiff's symptoms were as severe as alleged, he would follow the recommendations of his physician in an attempt to alleviate his symptoms. This failure to complete his physical therapy is evidence that Plaintiff's condition was not as limiting as he claimed.[74]

Finally, Plaintiff's daily activities were not consistent with his allegedly disabling symptoms. According to Plaintiff's function report, he remained able to engage in numerous activities, including driving a car, preparing simple meals, caring for pets, shopping, and reading.[75] An ALJ may consider a claimant's activities of daily living in assessing the credibility of the claimant's subjective complaints.[76]

---

[71] (*Id.* at 489.)

[72] *See Sias*, 861 F.2d at 480.

[73] (R. 21, 321-59.)

[74] *See* 20 C.F.R. § 404.1529(c)(3)(v), (4); *see also* 20 C.F.R. § 404.1530 (concerning importance of following prescribed treatment); *Sias*, 861 F.2d at 480 (endorsing an ALJ's consideration of a claimant's failure to follow prescribed treatment).

[75] (R. 17, 99, 101, 102.)

[76] *See* 20 C.F.R. § 404.1529(c)(3)(i).

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[77] The Commissioner may carry this burden by applying the medical-vocational grids[78] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[79] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[80]

Here, the ALJ found that Plaintiff suffered from limitations beyond those accounted for by the grids, and therefore used the grids merely as a framework in determining whether Plaintiff could perform other work. The ALJ then relied on the testimony of a vocational expert in the form of interrogatories in determining that there was a significant number of jobs in the national economy that Plaintiff could perform. This testimony provides substantial evidence to support the ALJ's finding that Plaintiff could perform other work and is not disabled.[81]

---

[77] *Jones*, 336 F.3d at 474.

[78] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[79] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

[80] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

[81] *Foster v. Halter*, 279 F.3d 348, 356-57 (6th Cir. 2001) (finding that substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question).

Substantial evidence supports the ALJ's determination that Plaintiff was not disabled, and the decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

                                         **s/ S. Thomas Anderson**
                                         S. THOMAS ANDERSON
                                         UNITED STATES DISTRICT JUDGE

                                         Date:   June 30, 2016.